# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DARNELL JOY,<br><br>        Petitioner,<br><br>vs.<br><br>CHARLES M. HARRISON,<br><br>        Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1:04-cv-05831-LJO-TAG HC

FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)

ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

Petitioner is in custody of the California Department of Corrections and Rehabilitation as a result of a January 9, 2003 conviction following a jury trial in the Superior Court of California, County of Kern (the "Superior Court") for obstructing and resisting a peace officer (Cal. Pen. Code § 69), reckless evading of a peace officer (Cal. Pen. Code § 2800.2), and misdemeanor assault on a peace officer (Cal. Pen. Code § 241(b)). (Doc. 12, Exh. 1). The jury also found true the allegations of prior prison terms pursuant to California Penal Code § 667.5(b). (Id.). Petitioner was sentenced to a term of twenty-five years to life plus three years. (Id.).

Petitioner filed a direct appeal of his conviction in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the judgment and sentence on March 10,

1

1  2004, in an unpublished opinion.  (Doc. 12, Exh. 3).  Petitioner filed a petition for review in the

2  California Supreme Court on April 16, 2004, which was denied on May 19, 2004.  (Doc. 12,

3  Exh. 4).

4  On June 14, 2004, Petitioner filed the instant federal petition.  (Doc. 1).  On December

5  13, 2004, Respondent filed an answer.  (Doc. 12).  On January 26, 2005, Petitioner filed a

6  traverse.  (Doc. 13).  Respondent concedes that Petitioner has exhausted the sole ground

7  contained in this petition.  (Doc. 12, p. 2).

8  ## FACTUAL BACKGROUND

9  The Court adopts the facts as summarized by the 5th DCA, in relevant part, as follows:

10  On July 3, 2002, Joy spent the day with Edwina Jackson at her Bakersfield
    residence in an attempt to reconcile their dating relationship.  According to
11  Jackson, an argument ensued over drugs and money and Joy hit her on the face.
    Joy dropped Jackson off at the hospital and drove off in her car.  Jackson told
12  Bakersfield Police Officer Stephen Geddes the next day that Joy forced her to give
    him $100 and to allow him to take her vehicle.

13

14  At approximately 3:40 a.m., Police Officer Ryan Newman located Jackson's car
    in front of an apartment building in an area of town known for narcotics sales.
15  Officer Geddes and another officer joined the scene as they watched three people,
    including one who matched Joy's description, get into the car and drive away.
16  The officers conducted a felony traffic stop and ordered the driver to show his
    hands.  The driver instead drove away at 45 to 50 miles per hour while the officers
17  pursued until the vehicle crashed into a palm tree.

18  The police officers saw Joy exit the car from the driver's seat.  Officers Newman
    and Geddes ran after Joy as Officer Ted Martinez pursued in a patrol car.  Officer
19  Martinez's patrol car eventually hit a fence that Joy was climbing and forced Joy
    to fall on the hood of the vehicle.  Appearing uninjured, Joy then stood on the car
20  and climbed over the fence as Officer Martinez followed.

21  Officer Martinez caught Joy and attempted to grab him.  Joy stopped and bent
    forward as the momentum carried Officer Martinez past Joy.  They struggled
22  briefly and Officer Martinez fell to the ground on his hands and knees.  As the
    officer turned around, he saw the silhouette of Joy coming towards him holding an
23  object.  Officer Geddes watched as Joy struck Officer Martinez with a piece of
    sheet metal.  Officer Martinez felt pressure on his back, heard a sound like a
24  cymbal, and fell back to the ground.  Joy continued to hit and push Officer
    Martinez.

25  Officer Newman soon arrived and saw Officer Geddes hitting Joy on the legs with
    his baton.  Officer Newman also struck Joy with his baton after Joy refused to
26  submit to the officers.  Joy continued to struggle until he eventually lost his
    footing and fell to the ground.

27

28  Officer Martinez recalled the struggle lasting almost 30 seconds.  Officer Geddes
    admitted that his "adrenaline was pumping" and he was "a little upset" because

Joy would not follow orders.  Officer Martinez scratched his knees and suffered a sore neck, Officer Newman suffered a sore arm, and Officers Geddes and Martinez both cut their hands while climbing the fence.

Joy denied pushing or striking any of the officers and described someone kicking him in the ribs after he fell.  He also felt "a whole lot of sticks" as the officers beat him.  Joy claimed on officer stated: "You crackhead nigger.  You shouldn't have left your girlfriend at the hospital."  He also described one of the officers hitting him "pretty hard" with a baton while he was lying on the ground causing his skull to crack open and requiring eight staples.

Nearby resident Mary Callaway was smoking on her front porch when she saw a Black man jump over the fence followed by three police officers.  Callaway described the incident as "somebody getting their behind whooped."

(Doc. 12, Exh. 3, pp. 2-4).

## DISCUSSION

### I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).  Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The original petition was filed on June 14, 2004, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

### II.  Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

1   Court of the United States" or (2) resulted in a decision that "was based on an unreasonable

2   determination of the facts in light of the evidence presented in the State court proceeding."

3   28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529

4   U.S. at 412-413.

5       The first prong of federal habeas review involves the "contrary to" and "unreasonable

6   application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and

7   mixed questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford,

8   384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established

9   federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme

10  Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a

11  [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141

12  (2005)(citing Williams v. Taylor, 529 U.S. at 405).  A state court decision involves an

13  "unreasonable application" of clearly established federal law "if the state court applies [the

14  Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Brown v.

15  Payton, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief simply

16  because the state court's decision is incorrect or erroneous; the state court's decision must also be

17  objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 511 (2003)(citing Williams v.

18  Taylor, 529 U.S. at 409).  Section 2254(d)(1)'s reference to "clearly established Federal law"

19  refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

20  of the relevant state-court decision."  Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade,

21  538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

22      The second prong of federal habeas review involves the "unreasonable determination"

23  clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual

24  findings.  Davis v. Woodford, 384 F.3d at 637(citing Miller-El v. Cockrell, 537 U.S. 322

25  (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's

26  adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable

27  determination of the facts in light of the evidence presented in the State court proceeding."

28  Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state

4

court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).  The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are  presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d),  the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002).  Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).-

### III.  Petitioner's Substantive Claim Should Be Denied

**Ground One**          **Petitioner Was Deprived Of Due Process Of Law By The Exclusion of Evidence of His Medical Condition That Was Crucial To His Defense**

Petitioner argues that the trial court violated his right to due process by excluding evidence of his medical condition, which Petitioner contends effectively deprived him of his right to present a defense.  (Doc. 1, p. 5).  For the reasons set forth below, the Court rejects Petitioner's claim.

Initially, the Court notes that a federal habeas court has no authority to review a state's application of its own laws, but rather must determine whether a prisoner's constitutional or

other federal rights have been violated. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Jackson</u>

<u>v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990).  Generally, the admissibility of evidence is a matter

of state law, and is not reviewable in a federal habeas corpus proceeding. <u>Estelle</u>, 502 U.S. at

67; <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985).  Here, Petitioner contends that the

state court improperly excluded evidence of his medical condition through the application of the

state's own rules of evidence.  Because the exclusion of evidence is primarily an issue of state

law, to the extent that this ground for relief is premised on the state court's improper application

of its own laws, it is not cognizable in a federal habeas court.

However, assuming arguendo that Petitioner states a federal claim for relief, it must

nevertheless be denied.  The procedural context within which this issue arose at trial was

summarized by the 5th DCA in its unpublished opinion as follows:

> Throughout the trial, Joy repeatedly attempted to introduce evidence of his
> medical condition following his arrest to prove the police officers used
> unreasonable or excessive force at the time of his arrest.  At the outset, the
> prosecutor objected to the introduction of Joy's medical records without laying a
> proper foundation from a physician to explain them.  The trial court deferred its
> ruling.  Mid-trial, the prosecutor offered to stipulate to the foundation of the
> medical records of the police officers, but not to their relevance.  The trial court
> accepted the stipulation, but expressly did not rule on the relevance of the records.
> foundation

> Officer Geddes subsequently testified that he "grazed" Joy with a baton.
> On cross-examination, defense counsel asked the officer if he was aware that Joy
> had been in the hospital for five days following his arrest because of a head injury.
> The trial court sustained the prosecutor's objection because there was "no
> evidence before the Court that, in fact, the assumption in the question was
> accurately presented."

> After a break in the proceedings, the prosecutor reiterated her objection
> that the medical evidence of both Joy and the officers was irrelevant absent expert
> testimony suggesting causation.  The prosecutor argued that the mere fact that Joy
> had been injured did not establish that the police used excessive force.  Defense
> counsel replied that he was trying to establish the officers were lying and that the
> jury should be able to consider Officer Geddes's attitude and belief that he simply
> grazed Joy's head when he had instead been in the hospital for five days.  The trial
> court repeated its former ruling and explained:

> > "The objection is not to the substance.  The objection is to
> > the nature of the question.  The question introduced irrelevant
> > information that was not before the Court.  The question called for
> > speculation.  You did not ask the officer before you asked that
> > ultimate question whether or not he knew how long the individual
> > was in the hospital.  So you simply asked the question after which
> > it was too late for anybody to say anything or do anything, because

the jury had already heard about five days from a head injury, none of which facts are before this Court and may or may not be accurate. I don't know yet. It may or may never come before the jury.

"But the form of the question assumed them, and, in light of all of our earlier discussions in this case regarding the admissibility of those hospital records, to simply blurt out facts like that in front of the jury in light of our previous discussions is unacceptable, and I'll not tolerate any more of them."

After further remarks from the prosecutor, the trial court added:

"There is no evidence before the Court how long he was in the hospital, for what cause, or whether that impact on the back of his head was from the baton or not. There is no such testimony before the Court. There may be. It may be appropriate at an appropriate time, but it is not now before the Court. And it was an inappropriate question."

Defense counsel later attempted to call Joy's treating physician to testify. The prosecutor again objected to the testimony based on her belief that the doctor could not distinguish between injuries caused by the car accident or by the officers. Defense counsel responded that "as an offer of proof," the doctor would interpret the medical records and added:

"As far as the underlying relevance of the records, I think it's relevant to show that my client did sustain a–more than a graze, as noted by the officers. He–staples had to be applied to his head as a form of medical treatment for those, and that he was kept under observations, I think underwent an MRI, and ultimately everything was negative and stabilized; so he was released after five days.

"So I think the jury can look at all of that and use that to–in terms of the nature of my client's injuries as it related to, you know, the veracity of the officers, as to their version of it. It goes, if nothing else, to whether my client was simply grazed in the head, as noted by the officer."

The trial court responded:

"I guess I'm having–I'm having difficulty with the relevancy of what the doctor can tell us. There are pictures in evidence of your client and the wound on the back of his head. The word 'graze' is not a medical term. The doctor is not going to be able to testify–you've given me no offer of proof that the doctor is going to be able to testify to anything that goes to the circumstances of the charges in the altercation with the officers, whether it was excessive use of force or whether it was a criminal act on the part of the defendant. Nothing you've said has any relevance to those charges.

"So with regard to the doctor's testimony, unless there's something more you've got to indicate to the Court he's able to

7

say, I can't see any relevance in the fact that he was there five days or that he got out after they did this checkup.  There is no medical issue with regard to that.

"So with regard to the doctor, I'm going to rule that there is no showing of relevance to what the doctor could contribute to the matter and rule that his testimony would not be relevant."

Defense counsel again tried to introduce evidence of the length of Joy's hospital stay.  The trial court sustained the prosecutor's objection, repeating "I don't think the time he was there has any relevance."

Joy described his injuries received the night of the arrest during his testimony.  Defense counsel then inquired about the length of his stay at the hospital and whether he had taken pain medication.  The trial court sustained objections to both questions and admonished the jury:

"I'm specifically instructing you from the beginning of this case the Court has instructed the parties with regard to various evidentiary issues.  One of those has to do with this precise series of last questions.  There is no relevancy to what happened at the hospital, how long this gentleman was there.

"The parties were instructed as to that, and having gone into that, I'm specifically instructing you to ignore that subject matter.  It has nothing whatever to do with this case.

"And [defense counsel], we have had numerous discussions out there regarding this issue.  You insist on going into it, and so in the presence of the jury I'm admonishing you there will be no further questions about that.  That is in violation of the Court's prior order."

(Doc. 12, Exh. 3, pp. 5-8).

The 5th DCA then went on to summarize Petitioner's argument as follows:

Joy contends he sought to admit the medical evidence to establish he was severely injured by the police at the time of the arrest.  He believes the disparity between the injuries received and those of the officers suggests compelling circumstantial evidence that "the police either overreacted and used force in excess of what was necessary to arrest" him "or actually beat him because they were angry at him for leading them on a high speed chase...."

(Id. at p. 8).  The 5th DCA noted that in California a person may not be convicted of either resisting arrest or assault on a police officer unless the officer was acting lawfully, an element that would be negated by the officer's use of excessive force.  (Id.).  The Court continued, "[u]nder Joy's defense theory, he could not have committed the offenses against the officers because they were not performing legitimate law enforcement activities."  (Id.).

///

In rejecting Petitioner's argument, the 5th DCA pointed out that, despite the prosecution's claim of lack of relevancy, the trial court had provided the defense with "numerous opportunities to detail how the medical evidence would tend to prove the officers caused Joy's injuries, but defense counsel never provided such an explanation." (Id. at p. 9).  Having made no offer of proof as to the relevancy of the evidence, and given the "leap of logic" required to conclude that, simply because Petitioner had spent five days in the hospital, his injuries necessarily resulted from the use of excessive force by the officers, the defense could not establish that the trial court's exclusion of the evidence was an abuse of discretion.  (Id.).  This, the Court noted, was especially true in light of the fact that, in addition to the fisticuffs with police officers, Petitioner had earlier had an altercation with his girlfriend, crashed his car into a tree, and fallen off of a fence onto a police car.  (Id.).

As mentioned previously, under the AEDPA, habeas relief will not be granted unless the adjudication of a state prisoner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  The strongest source of clearly established law implicating Petitioner's claim is Crane v. Kentucky, 476 U.S. 683 (1986).  Although addressing the exclusion of the circumstances of a defendant's confession, the Supreme Court in Crane nevertheless reaffirmed the general principle that criminal defendants have a "fundamental constitutional right to a fair opportunity to present a defense."  Id. at 687(citing California v. Trombetta, 467 U.S. 479, 485 (1984)).   As Justice O'Connor observed:

> "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, ...or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, ...the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"

Id. at 690(citing Trombetta, 467 U.S. at 485)(citations omitted).

However, a defendant's right to present evidence is not absolute; he must comply with established rules of evidence and procedure.  Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992); Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983).  A trial judge retains "wide latitude" to limit the defense's questioning of witnesses without violating the defendant's Sixth

1    Amendment rights. <u>Michigan v. Lucas</u>, 500 U.S. 145, 149 (1991); <u>Delaware v. Van Arsdall</u>,

2    475 U.S. 673, 679 (1986).  Due process does not require the admission of all relevant evidence,

3    and the state may properly exclude relevant evidence pursuant to state evidentiary rules.

4    <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996).

5        Thus, "[a] state court's evidentiary ruling is grounds for federal habeas corpus relief only

6    if it renders the state proceeding so fundamentally unfair as to violate due process." <u>Bueno v.</u>

7    <u>Hallahan</u>, 988 F.2d 86, 87 (9th Cir. 1993)(per curiam); <u>see also</u> <u>Estelle</u>, 502 U.S. at 67

8    (reemphasizing that federal habeas court may not reexamine state court determinations on state

9    law questions.).  The Supreme Court has defined the category of infractions that violate

10    fundamental fairness very narrowly. <u>See</u> <u>McGuire</u>, 502 U.S. at 72. "To evaluate whether

11    exclusion of evidence reaches constitutional proportions, we should consider five factors: (1) the

12    probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is

13    capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely

14    cumulative; and (5) whether it constitutes a major part of the attempted defense." <u>Tinsley v.</u>

15    <u>Borg</u>, 895 F.2d 520, 530 (9th Cir. 1990)(citations omitted).  The court "must then balance the

16    importance of the evidence against the state interest in exclusion." <u>Id.</u>; <u>Miller v. Stagner</u>, 757

17    F.2d 988, 994 (9th Cir. 1985)   In so doing, a court must consider the purpose of the rule; its

18    importance; how well the rule implements its purpose; and how well the purpose applies to the

19    case at hand. <u>Stagner</u>, 757 F.2d at 994-995.  The court must give due weight to the substantial

20    state interest in preserving orderly trials, in judicial efficiency, and in excluding unreliable or

21    prejudicial evidence. <u>Id.</u>

22        Ordinarily, the Court would next proceed to apply the above standards to the state court's

23    exclusion of evidence of Petitioner's medical condition.  However, as a preliminary matter, it

24    must be noted that Petitioner failed to make an offer of proof to the trial court regarding what

25    evidence Petitioner's treating physician would provide that was relevant to the charges faced by

26    Petitioner.  The 5th DCA rejected Petitioner's claim on this ground.  When a state court rejects a

27    claim that excluded evidence violated due process based on the failure of defense counsel to

28    ///

make an offer of proof, the state court's decision is not objectively unreasonable. <u>Hernandez v.</u>

<u>Pliler</u>, 2006 WL 377136 (9th Cir. Feb. 17, 2006), *1.

The general rule in California is that in order to raise a claim regarding excluded

evidence, the defendant must first make an offer of proof as to the specific nature of that

evidence, unless it is obvious from the context or unless making the offer would be futile.  Cal.

Evid. Code § 354.[1]  Rule 103 of the Federal Rules of Evidence contains a variant of the

California provision.  Fed.R.Evid. 103(a)(2).[2]  <u>See</u> 21 Charles Alan Wright  & Kenneth W.

Graham, Jr., <u>Federal Practice and Procedure: Evidence 2d</u>, § 5040, p. 883 (2005), citing the

Advisory Committee Notes to the original Rule 103 ("Since the drafters [of Fed.R.Evid. 103]

cited the California provision as 'similar,' we can infer they intended similar elements to be read

into Rule 103.").

An offer of proof "[e]nables a trial judge to determine whether the evidence would be

available for any purpose, and ensures that the record will be sufficiently detailed to permit

appraisal by an appellate court of the scope and effect of the ruling, so that it can determine

whether the trial court committed reversible error in excluding the evidence." <u>United States ex</u>

<u>rel. Veal v. DeRoberts</u>, 693 F.2d 642, 647 (7th Cir. 1982)(quoting <u>Weinstein's Evidence</u>,

¶ 103[03] at 103-127 (1977)(emphasis supplied).   A reviewing court cannot review evidence not

presented to the court below.  <u>See</u> <u>United States v. Pacheco</u>, 912 F.2d 297, 307 (9th Cir. 1990);

<u>Earle v. Benoit</u>, 850 F.2d 836, 847 (1st Cir. 1988)("We know of no way properly to review

appellant's current claim of error on this incomplete record.").

---

[1]California Evidence Code § 354 provides as follows: "A verdict or finding shall not be set aside, nor shall
the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the
court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of
resulted in a miscarriage of justice and it appears of record that:
    (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the
    questions asked, an offer of proof, or by any other means;
    (b) The rulings of the court made compliance with subdivision (a) futile; or
    (c) The evidence was sought by questions asked during cross-examination or recross-examination."

[2]Federal Rule of Evidence 103(a)(2) provides as follows: "Error may not be predicated upon a ruling which
admits or excludes evidence unless a substantial of the party is affected, and ... the substance of the evidence was
made known to the court by offer or was apparent from the context within which the questions were asked."

"...[S]ome writers think the purpose of an offer of proof is to allow the appellate court to see that the ruling of the trial court was an error. As one appellate court complained, '[w]ithout the substance of the proffered evidence, this court cannot determine its admissibility and probative value.' The better view would seem to be that the offer of proof serves both purposes–first, determining whether the trial judge erred, then whether the error requires reversal.

21 Wright & Graham, <u>Federal Practice and Procedure</u> § 5040 at 878 (footnotes omitted).

"[H]owever sympathetic an appellate court may be, without an offer of proof the court cannot determine from the record whether there was any error in the exclusion of the evidence, much less whether the error was reversible or harmless because the evidence excluded was merely cumulative of evidence already in the record."

<u>Id.</u>, at 878-879 (footnotes omitted). Thus, an offer of proof is "designed to resolve doubts as to what testimony the witness would have in fact given...." Fed.R.Evid. 103 Advisory Committee Notes.

Here, Petitioner's failure to make a specific offer of proof is fatal to any meaningful review of his claim in these habeas proceedings. Absent a clear offer of proof regarding what Petitioner's treating physician would have testified to regarding a possible causative relationship between Petitioner's injuries and the conduct of the arresting officers, the Court cannot properly apply the five <u>Tinsley</u> factors to these facts. For example, the Court cannot assess the probative value of Petitioner's medical condition to the central issue of Petitioner's criminal culpability without knowing precisely whether the treating physician would have offered a medical opinion that Petitioner's injuries were partially or wholly the result of the use of significant or possibly excessive force by the police officers.

Nor, without knowing the precise nature of such evidence, can the Court assess the reliability of such evidence, or its tendency to confuse or distract the jurors from the core issues in the trial, or even whether the evidence was redundant. As the 5th DCA noted, Petitioner himself testified to the extent of his injuries and photographs of him showing his visible injuries were admitted into evidence. Absent an offer of proof, it is impossible to do anything other than speculate whether the treating physician's testimony would have been merely cumulative to that of Petitioner and the photographic exhibits, or whether, alternatively, it would have added new and relevant evidence supporting Petitioner's defense.

1    Finally, absent an offer of proof, it is impossible for the Court to determine whether the

2    excluded evidence would have constituted a major part of the defense or whether, if it did, the

3    exclusion of such evidence might nonetheless have been harmless under Brecht v. Abrahamson,

4    507 U.S. 619, 638 (1993)(A federal court may grant habeas relief based on trial error only when

5    that error "had substantial and injurious effect or influence in determining the jury's verdict.")

6    From the foregoing, the Court finds that while Petitioner was given an ample and

7    reasonable opportunity to present an offer of proof to the trial court to support Petitioner's claim

8    that the proffered evidence was relevant to the charged offenses, he failed to take advantage of

9    those opportunities by making such an offer.  From the repeated statements of the trial judge, it is

10   apparent that this is all that the trial judge would have required in order to admit the evidence.

11   Absent such a showing, however, this Court simply has no basis in the record on which to

12   conclude that the trial court's exclusion of this evidence violated Petitioner's due process rights.

13   Accordingly, the Court cannot agree with Petitioner that the state court's adjudication of this

14   issue was contrary to, or an unreasonable application of, clearly established federal law.

15   Therefore, Petitioner's claim must be rejected and the petition should be denied.

16                                      **RECOMMENDATIONS**

17   Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus

18   (Doc. 1), be DENIED.

19   These Findings and Recommendations are submitted to the United States District Judge

20   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of

21   the Local Rules of Practice for the United States District Court, Eastern District of California.

22   Within twenty (20) days after being served with a copy, any party may file written objections

23   with the court and serve a copy on all parties.  Such a document should be captioned "Objections

24   to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

25   and filed within ten (10) court days (plus three days if served by mail) after service of the

26   objections.  The District Judge will then review the Magistrate Judge's ruling pursuant to

27   28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the

28   ///

specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951

F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **September 12, 2007**                                   **/s/ Theresa A. Goldner**
                                                                      UNITED STATES MAGISTRATE JUDGE